UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NEAL PATEL,

                        Plaintiff,

    -against-

INCORPORATED VILLAGE OF OLD
BROOKVILLE, OLD BROOKVILLE
POLICE DEPARTMENT, POLICE
OFFICER MICHAEL J. MARINO, in his
official and individual capacity, POLICE
OFFICER THOMAS LAMB, in his official
and individual capacity, COUNTY OF
NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, POLICE OFFICER
WILLIAM REAVY, in his official and
individual capacity, and OFFICER JOHN
DOE 1-10, in his/her individual capacity,

                        Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

17-CV-2455 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil rights action are: (i) Defendants' the Incorporated Village of Old Brookville ("Old Brookville" or the "Village"), the Old Brookville Police Department (the "OBPD"), Police Officer Michael J. Marino ("Marino") and Police Officer Thomas Lamb ("Lamb," collectively the "Village Defendants") motion for summary judgment, *see* Motion for Summary Judgment ("Village Defendants' Motion" or "Village Defs.' Mot."), Docket Entry ("DE") [79]; Memorandum of Law in Support of the Village Defendants' Motion for Summary Judgment ("Village Defs.' Mem."), DE [79-1]; and (ii) Defendants' County of Nassau (the "County"), Nassau County Police Department (the "NCPD") and Police Officer

1

William Reavy ("Reavy," collectively the "County Defendants") motion for summary judgment. *See* Notice of Motion for Summary Judgment (County Defendants' Motion" or "County Defs.' Mot."), DE [80]; Memorandum of Law in Support of County Defendants' Motion for Summary Judgment ("County Defs.' Mem."), DE [83].

By way of Complaint dated April 24, 2017, Plaintiff Neal Patel ("Plaintiff" or "Patel") commenced this action against the Village Defendants and County Defendants pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York state law for malicious prosecution and abuse of process related to his March 22, 2014 arrest and subsequent prosecution. *See generally* Complaint ("Compl."), DE [1]. For the reasons set forth below, as to the Village Defendants' Motion, the Court: (i) grants summary judgment as to Plaintiff's abuse of process claim, all claims against the OBPD, all claims against Lamb in his official and individual capacities, all claims against Marino in his official capacity, and the *Monell* claim against the Village; but (ii) denies summary judgment as to Plaintiff's federal and state malicious prosecution claims against Marino in his individual capacity and on the issue of qualified immunity. As to the County Defendants' Motion, the Court: (i) grants summary judgment as to Plaintiff's abuse of process claim, all claims against the NCPD, all claims against Reavy in his official capacity, and the *Monell* claim against the County; but (ii) denies summary judgment as to the federal and state malicious prosecution claims against Reavy in his individual capacity and on the issue of qualified immunity.

## I.    BACKGROUND

**A. Relevant Facts**

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements.  *See* Local Rule 56.1 Statement in Support of the Village Defendants' Motion for Summary Judgment ("Village Defs.' 56.1"), DE [79-2]; Statement of Facts Pursuant to Local Civil Rule 56.1 ("County Defs.' 56.1"), DE [80-1]; Plaintiff's Statement of Disputed Facts in Opposition to Village Defendants' Local Rule 56.1 Statement and Counter-Statement of Facts ("Pl. Opp. to Village 56.1" and "Pl. Counter 56.1"), DE [84-1]; Statement of Disputed Facts in Opposition to County Defendants' Local Rule 56.1 Statement and Counter-Statement of Facts ("Pl. Opp. to County 56.1" and "Second Pl. Counter 56.1") DE [84-2]; County Defendants' Reply to Plaintiff's Counter Statement of Facts pursuant Local Civil Rule 56.1 ("County Reply 56.1"), DE [91].[1] [2]  While the relevant facts in this case are not overly complex, the parties disagree on several key events as indicated below.

### 1.   *Plaintiff's Arrest*

Plaintiff is a resident of Nassau County, New York, the owner and operator of NBP Insurance Brokerage, Inc., and serves on the Planning Board for Old Brookville.

---

[1] The Court notes that page two of Plaintiff's Statement of Disputed Facts in Opposition to Village Defendants' Local Rule 56.1 Statement and Counter Statement of Facts ("Pl. Opp. to Village 56.1" and "Pl. Counter 56.1"), filed at DEs [84-1] and [88-1], is missing.  This omission has no bearing on the Court's conclusions, however.  Further, rather than respond to Plaintiff's Counter Statement of Facts, the Village Defendants argue that the Counter Statement should be rejected because the documents include facts not supported by the record as Plaintiff only cites his deposition and attempts to make legal arguments.  *See* Reply Memorandum of Law in Support of the Village Defendants' Motion for Summary Judgment ("Village Defs.' Reply"), DE [90] at 6.  While the Court does not reject Plaintiff's Counter Statement of Facts in its entirety, it ignores all legal arguments in any party's Rule 56.1 statement and identifies all disputed facts as appropriate.

[2] The Court further notes that Plaintiff's First and Second Counter Statement of Facts are materially identical except for the addition of two non-material facts in the Second Counter Statement. *See* Second Pl. Counter 56.1 ¶¶ 34, 54.  Accordingly, the Court cites primarily to Plaintiff's Second Counter Statement of Facts for purposes of this Memorandum and Order.

Compl. ¶¶ 25-26.  On or about March 22, 2014, at approximately 1:26 p.m. Patel and his nine-year-old son were driving in a red Ferrari on their way home from a nearby pizza parlor.  Village Defs.' 56.1 ¶ 1; Compl. ¶ 27.  Patel was involved in a serious automobile accident at the intersection of Cedar Swamp Road ("Route 107") and Wheatley Road in Old Brookville when he was attempting to turn left and a collision occurred with another vehicle, and which caused the airbags to be deployed and Plaintiff's car to be totaled. Village Defs.' 56.1 ¶¶ 2-3; Compl. ¶ 28; Second Pl. Counter 56.1 ¶¶ 5-6.

Patel claims that after the collision, he checked to make sure that his son was unharmed, and then got out of his vehicle to survey the damage.  Second Pl. Counter 56.1 ¶ 7.  Plaintiff also noted that his arm and leg had been injured.  *Id.*  Patel then returned to his vehicle and instructed his son to call his wife while he called Tim Dougherty, the building inspector for Old Brookville, and asked him to send the police to his location.  *Id.* ¶¶ 7-8.

Officer Alvino ("Alvino") of the OBPD was the first to arrive on the scene and observed Plaintiff's car on the shoulder of Route 107 and parked behind it.  Pl. Opp. to Village 56.1 ¶¶ 4-5.  Alvino approached the passenger's side of the vehicle and confirmed the Patel's son was unharmed.  *Id.* ¶ 6.  Alvino briefly spoke with Plaintiff and was collecting his license and registration when Officer Marino arrived and approached the vehicle.  *Id.* ¶ 7.  Alvino left Plaintiff's car and proceeded to speak with the occupants of the other vehicle.  *Id.*  The other car was a Nissan Altima, occupied by the Josen family, some of whom were injured and requested medical

4

attention. *Id.* ¶¶ 8-9.  The parties dispute what the Josens' said to Alvino regarding the cause of the accident. *Id.* ¶ 10.

Marino approached Patel and claims that while he was speaking with Plaintiff, he observed that Patel's speech was slurred, his eyes were glassy and bloodshot, and his breath smelled of alcohol, which Plaintiff disputes.  Pl. Opp. to Village 56.1 ¶ 11. Patel told Marino that he had nothing to drink that day but was at a party the night before and had not showered between then and the accident, and further stated that he suffers from allergies, which he treats with eye drops, but forgot to take his eye drops that day. *Id.* ¶¶ 12-13.  Plaintiff asserts, and Defendants do not dispute, that the night before the accident, he attended a bar mitzvah and reception with his wife where he drank approximately two to two-and-a-half vodka cranberries over the course of more than four hours.  Second Pl. Counter 56.1 ¶¶ 1-2.  Patel contends that he returned home that evening and went to bed around 1:00 a.m.  He rose before 8:30 a.m., brushed his teeth, ate breakfast, and played with his son. *Id.* ¶¶ 2-3.  Around 12:00 p.m., he took his son to a pizza parlor in East Norwich, New York where he consumed one pizza and two sparkling waters with lime. *Id.* ¶ 4.

Marino asked Plaintiff to exit the vehicle and accompany him to the side of the road where Marino attempted to administer field sobriety tests.  Pl. Opp. to Village 56.1 ¶ 14.  Marino is trained in administering this testing and has given approximately 25 to 50 field sobriety tests over his 22-year career with the OBPD. *Id.* ¶ 15.  Patel claims that he agreed to exit the vehicle, but he believed that Marino intended to interview him for an accident report. *Id.* ¶ 14.  Plaintiff further states

that he then repeatedly voiced his concern for his minor son's safety who was left unattended in the damaged vehicle in the intersection throughout Marino's attempts to administer these tests, although Patel does not dispute that his vehicle was on the shoulder of Route 107, as opposed to being in the middle of the street.  *Id.*; Pl. Opp. to Village 56.1 ¶¶ 4-5.  Marino took out his pen, told Plaintiff to watch the tip of his pen, and began taking notes, although the parties dispute what was said.  *Id.* ¶ 16. Marino claims that Patel told him not to take notes and that Plaintiff refused to pay attention to his instructions.  *Id.* ¶¶ 16-18.  According to Marino, he told Patel to walk along a line from heel to toe, but he refused.  *Id.* ¶ 19.

Plaintiff states that he could not pay attention to Marino because he was concerned for his son's safety and asked to get his son out of the car before Marino started taking notes.  *Id.* ¶¶ 17-18.  Patel contends that he told Marino that the accident report could wait until his son was safe, which visibly angered Marino who then told Plaintiff, "You don't tell me what to do," and an argument ensued.  Second Pl. Counter 56.1 ¶ 12.  Patel claims that Marino then for the first time asserted that he smelled alcohol on his breath.  *Id.*  He further states that he was unable to perform the heel-toe balance test due to his pain and injuries from the car accident.  Pl. Opp. to Village 56.1 ¶ 19.  According to Plaintiff, he informed Marino of his injuries and requested medical attention, but Marino denied his request and refused to allow Patel to remove his son from the intersection.  *Id.*; Second Pl. Counter 56.1 ¶¶ 13-14. Plaintiff asserts that Marino's attempts to administer unnecessary sobriety tests were retaliatory and in bad faith although no further explanation or evidence

6

regarding Marino's motive is provided. Pl. Opp. to Village 56.1 ¶ 18; Second Pl. Counter 56.1 ¶ 13. Patel further claims that Alvino, the first officer to arrive at the scene, did not observe slurred speech, glassy or bloodshot eyes, or the smell of alcohol, but Defendants counter that Alvino testified during his deposition that he did not have the opportunity to evaluate whether Plaintiff was intoxicated and only heard a few words from him. Second Pl. Counter 56.1 ¶ 9; County Reply 56.1 ¶ 9.

Plaintiff was placed under arrest and transported to the Village police station. Pl. Opp. to Village 56.1 ¶ 20. He claims that Marino did not read him his Miranda rights and left the scene of the accident with his son unattended in the vehicle at the intersection. Second Pl. Counter 56.1 ¶¶ 16-17. According to Patel, Officer Lamb was the front-seat passenger in Marino's vehicle at his arrest and that Marino bragged to Lamb about the arrest on the way to the OBPD station saying "look, we got one of these guys" referring to Patel. *Id.* ¶ 18. Plaintiff understood "these guys" to mean a resident of the Village of Old Brookville although he provides no further explanation. *Id.*[3]

### 2. *Plaintiff's Transport from the OBPD to the NCPD*

Upon arriving at the OBPD station, Patel was placed in a cell for approximately ten to fifteen minutes. Second Pl. Counter 56.1 ¶ 19. According to Defendants, their breathalyzer machine was inoperable, so Plaintiff was then taken to Nassau County Police Central Testing Section in Mineola to verify if their

---

[3] Plaintiff mistakes Old Brookville for Old Brookhaven at various points throughout his Second Counter Statement of Facts. *See, e.g.*, Second Pl. Counter 56.1 ¶¶ 17, 19. Presuming these to be typos, they have no bearing on the Court's conclusions.

Intoxilyzer machine, a type of breathalyzer, was there.  Pl. Opp. to Village 56.1 ¶ 21; Pl. Opp. to County 56.1 ¶ 10.  The Village Defendants claim that Lamb accompanied Marino and Patel from the OBPD station to the NCPD station but was not present at the scene of the arrest.  Pl. Opp. to Village 56.1 ¶ 22.  Plaintiff contends that Marino and Lamb did not speak to him or each other during the fifteen-minute ride to Mineola and that Marino was visibly anxious during the drive.  *Id*. ¶ 22.  Patel asserts that the transfer to the NCPD station for a breathalyzer test was retaliatory although no further explanation or evidence is provided.  *Id*. ¶ 21.

March 22, 2014 was a Saturday, and at the time, County "breath techs"—police officers certified to administer breathalyzer examinations—were not scheduled to work after 11:00 a.m. on weekends at the Nassau County Police Central Testing Section.  Pl. Opp. to County 56.1 ¶¶ 1-2.  The breath tech was signed off-duty at 1:00 p.m. that day, and pursuant to a collective bargaining agreement, once an officer signs off-duty, he cannot resume work for at least nine hours.  *Id*. ¶¶ 3-4.  Moreover, there was no breath tech scheduled to work that day until Officer Reavy's tour started at 7:00 p.m.  Accordingly, a supervisor directed Reavy to come in early to perform a breathalyzer test and remain on duty through his scheduled tour.  *Id*. ¶¶ 5-7.  The records bureau blotter indicates Reavy signing in for duty at 2:40 p.m. on March 22, 2014.  *Id*. ¶ 8; County Defs.' Mem. Ex. K, DE [82-7].

Plaintiff claims that upon arriving at the NCPD station, Marino and Lamb removed Patel from their vehicle and brought him up a flight of stairs into the back of the building where an unknown NCPD officer was waiting for their arrival.  Second

8

Pl. Counter 56.1 ¶ 23.  Marino and the unknown NCPD officer left Plaintiff with Lamb who brought him into another room filled with office-style cubicles occupied by NCPD officers.  *Id*. ¶ 24.  Another unknown NCPD officer approached Plaintiff and began asking his name, address, and other basic information, but then ceased his questioning and told Patel that "somebody else is going to be coming here to do all this with you," and then departed.  *Id*. ¶ 25.  Plaintiff waited, handcuffed, on a bench in this room for approximately 15 to 20 minutes, and heard Defendants Marino and Lamb speaking with NCPD officers.  *Id*. ¶ 26.

Reavy, who was wearing a white lab coat, entered the room, approached Patel, and said he would be administering a breathalyzer test.  *Id*. ¶ 27.  Plaintiff then requested to speak with his attorney, and Marino removed his handcuffs, and he was directed by Reavy to use the NCPD landline.  *Id*. ¶ 29.  Patel complied, spoke with his attorney for approximately two minutes, and then consented to be breathalyzed by Reavy.  *Id*. ¶ 30.  Reavy took Plaintiff to one of the cubicles which contained a breathalyzer while Lamb and Marino remained along the periphery of the room.  *Id*.  Reavy had a paper questionnaire and asked Patel various questions, in response to which Plaintiff claims he disclosed, among other things, that he had consumed no alcohol that day, and that he was suffering and in pain from the injuries he had sustained in the car accident.  *Id*. ¶ 31.  Reavy recorded Patel's responses on his questionnaire.  *Id*.; *see* County Defs.' Mem. Ex. F, DE [82-2].

The County Defendants claim that as part of his routine, Reavy prepares a report specifying the order in which he intends to conduct a standardized field

sobriety test.  Pl. Opp. to County 56.1 ¶ 12.  Reavy's report reflects that Plaintiff refused to participate in some of the tests, which are noted with a slash-through on the report, and indicates that he detected a strong odor of alcohol on Patel, which Plaintiff disputes.  *Id*. ¶¶ 13-14; *see* County Defs.' Mem. Ex. F.  Patel asserts that he initially responded by asking to speak with his attorney, whom he called, and then consented to the tests.  Pl. Opp. to County 56.1 ¶ 13.  Reavy conducted horizontal and vertical nystagmus tests, which can be indicators of the presence of drugs or alcohol in the system or potential head trauma.  *Id*. ¶¶ 15-17.  Reavy reported indications of alcohol and ruled out any head injury, and further noted that Patel's eyes were glassy and bloodshot, which Plaintiff disputes.  *Id*. ¶¶ 18-19.

According to Defendants, Patel completed a breathalyzer test, administered by Reavy employing an Intoxylizer 5000 breath testing device, which showed a blood alcohol content ("BAC") level of .241%.  Pl. Opp. to County 56.1 ¶ 20; Pl. Opp. to Village 56.1 ¶ 26; Village Defs.' Mem. Ex. G, DE [79-10].  The time was on or about 3:42 p.m. on March 22, 2014.  *See* Village Defs.' Mem. Ex. G.  Defendants Marino and Lamb were not in the testing cubicle when Reavy administered the test, so Reavy provided Marino with the results once the testing was complete.  Pl. Opp. to Village 56.1 ¶¶ 28-29.

Plaintiff counters that after Reavy took him to the cubicle, he produced an unlabeled, unpackaged mouthpiece from his pocket and attached it to the breathalyzer.  Second Pl. Counter 56.1 ¶ 32.  Reavy ordered Patel to blow into the mouthpiece until he was instructed to stop, and Plaintiff complied and blew into the

breathalyzer for approximately 20 to 30 seconds.   According to Patel, Defendant Reavy then told Plaintiff, "I got you," and nodded to Marino, which Defendants dispute. *Id.* ¶ 33.   Reavy informed Patel that he had failed the breathalyzer test, and Plaintiff, who stated he was completely sober, asked Reavy to administer another breathalyzer test, which he refused, claiming that it was NCPD protocol to only administer one test. *Id.* ¶ 35.   Plaintiff then requested a blood test, which Reavy also refused. *Id.*   Reavy ushered Patel to a restroom located off of the testing room, and when Plaintiff finished and exited the restroom, he observed Marino, Lamb, and Reavy speaking with each other. Plaintiff overheard Reavy say, "I got him for you" to Marino. *Id.* ¶ 37.   Patel claims that Reavy did not at any time show him the results of his breathalyzer test and only learned that it returned a BAC reading of .241% at his arraignment the following day. *Id.* ¶ 36.

The County Defendants dispute Plaintiff's version of the events in that Patel failed mention that any portion of his body hurt until after Reavy conducted his tests. County Reply 56.1 ¶ 31; *see* County Defs.' Mem. Exs. F, G.   They further claim that Reavy demonstrated the test with a sample mouthpiece that had been in his pocket, and that sample mouthpiece was not connected to the breathalyzer.   County Reply 56.1 ¶ 32.   Following his demonstration of the procedure, Reavy took a new wrapped mouthpiece and attached it to the hose of the breathalyzer machine. *Id.*   The County Defendants further dispute that Patel requested a blood test, that Plaintiff consented to continue and complete the other parts of the field sobriety test, and that Reavy said, "I got you" to Patel and "I got him for you" to Marino. *Id.* ¶¶ 33, 37.

11

Plaintiff states that after the test, Marino approached him, handcuffed him tightly, and sat him down by forcefully pushing Patel's hands down on to a bench and told him, "don't resist." Second Pl. Counter 56.1 ¶ 38. Plaintiff understood this to be a threat of physical violence. *Id.* Once the testing was completed, Marino and Lamb took Plaintiff to the Nassau University Medical Center (the "NUMC") to be evaluated for his fitness to be confined. Pl. Opp. to County 56.1 ¶ 21; Second Pl. Counter 56.1 ¶ 39. Reavy had no further contact or interaction with Plaintiff until he testified at Patel's criminal trial. Pl. Opp. to County 56.1 ¶ 22.

Plaintiff states that he was evaluated by NUMC staff, who determined via x-ray that he had sustained soft tissue injuries to his arm and leg. Second Pl. Counter 56.1 ¶ 40. He further claims that he asked NUMC Nurse BiBi Khan ("Khan") if he seemed drunk or impaired in any way, and Khan advised that he seemed fine and had scored perfectly on the cognitive portion of her examination. Second Pl. Counter 56.1 ¶ 41. Defendants dispute these assertions as Plaintiff cites only to his deposition transcript and has not submitted any hospital records or admissible statements from any medical provider. County Reply 56.1 ¶¶ 40-41; Village Defs.' Reply at 5-6. According to Patel, Marino was present during the examination, spoke to NUMC personnel, and was "flirting with the NUMC nurses on duty in the emergency department." Second Pl. Counter 56.1 ¶ 42. Once Patel was evaluated and treated, Marino and Lamb returned Plaintiff to their vehicle and drove him back to the OBPD. *Id.* ¶ 43.

Patel further claims that during the approximately 30-minute drive from the NUMC back to the OBPD station, he noticed that one of his neighbors was driving a nearby vehicle. *Id.* ¶ 44. He expressed that he knew the driver and that he hoped the driver would not recognize him in the back of a police car. *Id.* In response, Marino laughed and attempted to drive closer to the car so that Plaintiff would be visible to the driver, but Lamb dissuaded Marino from trying to embarrass Patel in this manner. *Id.* Marino and Lamb did not interact with Plaintiff again during the remainder of the drive back to the police station, but Marino expressed to Lamb that the nurses who had been working at the NUMC were attracted to him. *Id.* ¶ 45. Defendants dispute these assertions.

Plaintiff claims that upon arriving at the OBPD station, his handcuffs were removed, and he was returned to the same holding cell he had occupied earlier that day where he remained from approximately 5:30 p.m. until 12:00 a.m. *Id.* ¶ 46. Patel's wife was summoned to collect his personal property, but he was not permitted to see her. *Id.* At approximately 12:00 a.m. on March 23, 2014, Plaintiff was transferred to a holding cell beneath the Nassau County courthouse in Mineola by Marino and an unknown OBPD officer. *Id.* ¶ 47. Plaintiff remained in this cell until 9:00 a.m. when he was brought upstairs to the courthouse for his arraignment. *Id.* ¶ 48.

### 3.    *Plaintiff's Prosecution*

Plaintiff was criminally charged with violating: (i) New York Vehicle & Traffic Law ("VTL") § 1192-2a(a)&(b) aggravated driving while intoxicated ("DWI"); (ii) VTL

§ 1192-2 aggravated driving while intoxicated; (iii) VTL § 1192-3 driving while intoxicated; (iv) New York Penal Law ("PL") § 260.10-1 endangering the welfare of a child; (v) PL § 1192-2, driving while intoxicated; and (vi) PL §120.00 assault in the third degree.   Compl. ¶ 54; Pl. Opp. to County 56.1 ¶ 9; Village Defs.' Mem. at 6; County Defs.' Mem. Ex. D, DE [82].   He pled not guilty to all charges against him and was released on his own recognizance.   Second Pl. Counter 56.1 ¶ 48.   Plaintiff was required to surrender his driver's license and claims that this and the pending criminal case caused him extreme embarrassment and inconvenience, and resulted in extensive and in some cases irreparable damage to his finances, personal and business relationships, and physical and mental wellbeing.   *Id.* ¶ 49.

Patel's criminal trial was held from April 7, 2016 until a final judgment was reached by the jury acquitting him of all charges on April 28, 2016.   *Id.* ¶ 50; *see* Pl. Opp. Ex. G, DE [88-9].   Plaintiff claims that during the trial, it was discovered that Alvino, in coordination with Marino, amended the DMV motor vehicle accident form ("MV-104") pertaining to the car accident.   Second Pl. Counter 56.1 ¶ 51; *see* Pl. Opp. Exs. I, J, DEs [88-11], [88-12].   Patel contends that this amendment falsely reflected that the Nissan Altima had been traveling northbound on Route 107 instead of eastbound on Wheatley Road as had originally been reported to make Plaintiff appear at fault for the collision.   Second Pl. Counter 56.1 ¶ 51; *see* Pl. Opp. Exs. I, J.

Patel further contends that Marino was impeached at trial on the issue of whether he left Plaintiff's son unattended at the accident site.   Second Pl. Counter 56.1 ¶ 52; Pl. Opp. Ex. L, DEs [88-14]-[88-18] at 224-29.   Plaintiff claims that Marino

testified that Patel's wife had already arrived and taken custody of Plaintiff's son when Marino arrested Patel and took him away from the accident scene. Second Pl. Counter 56.1 ¶ 52. Plaintiff also claims that Marino was impeached on the issue of proper procedure for bringing DWI charges. *Id*. ¶ 53. Marino testified that field sobriety tests are non-conclusive and proper police procedure dictates that a suspect be given a breathalyzer or other scientifically supported test before charging the suspect with a DWI. *Id*. Patel claims that Marino admitted that he had filled out an arrest report to charge Plaintiff with aggravated DWI, driving with a BAC in excess of .18%, less than an hour after the accident and before he brought Patel to Nassau County Police Central Testing for the breathalyzer test. *Id*. ¶ 53. While Plaintiff cites to pages 313 to 314 of the criminal case transcript, this portion of the transcript is not submitted to the Court. *See id*. Ultimately, Plaintiff was acquitted on all charges. *Id*. ¶ 55.

### B. Procedural History

Based on the above, Plaintiff commenced this action by way of Complaint dated April 24, 2017 against the Village Defendants and the County Defendants under Section 1983 and New York law for malicious prosecution and abuse of process, seeking punitive and compensatory damages totaling $22 million. *See* Compl.

The County Defendants answered on July 5, 2017 and asserted cross-claims against the Village Defendants for contribution and indemnification. *See* DE [12]. The Village Defendants answered Plaintiff's Complaint and the cross-claims on July

10, 2017.  *See* DEs [14]-[15].  The parties consented to this Court's jurisdiction for all purposes on July 17, 2018.  *See* DE [29].

Discovery closed on August 3, 2021, and Defendants filed their respective motions for summary judgment on March 10, 2022.  *See* Village Defs.' Mot.; County Defs.' Mot., Village Defs.' Reply; Reply Memorandum of Law in Further Support of the County Defendants' Motion for Summary Judgment ("County Defs.' Reply"), DE [89].  Plaintiff opposes both motions.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment ("Pl. Opp."), DE [88].[4]  For the reasons set forth below, as to the Village Defendants' Motion, the Court: (i) grants summary judgment as to Plaintiff's abuse of process claim, all claims against the OBPD, all claims against Lamb in his official and individual capacities, all claims against Marino in his official capacity, and the *Monell* claim against the Village; but (ii) denies summary judgment as to Plaintiff's federal and state malicious prosecution claims against Marino in his individual capacity and on the issue of qualified immunity.  As to the County Defendants' Motion, the Court: (i) grants summary judgment as to Plaintiff's abuse of process claim, all claims against the NCPD, all claims against Reavy in his official capacity, and the *Monell* claim against the County; but (ii) denies summary judgment as to the federal and state malicious prosecution claims against Reavy in his individual capacity and on the issue of qualified immunity.

## II.   LEGAL STANDARD

---

[4] Plaintiff's Opposition and exhibits are filed twice at DEs [87] and [88].  The Court cites to DE [88] for ease of reference.

### A. Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Village of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n.10 (N.D.N.Y. Sep. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

### B. Section 1983

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under Section 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

### III.   DISCUSSION

The Village Defendants and the County Defendants move for summary judgment on all claims. Applying the standards outlined above and for the reasons set forth below, both motions are granted in part and denied in part. Each of Plaintiff's claims is addressed separately.

### A. Plaintiff's Malicious Prosecution Claims

The Village Defendants seek summary judgment on Plaintiff's federal and state malicious prosecution claims arguing that the arrest and prosecution were supported by probable cause as a matter of law. Village Defs.' Mem. at 4-8. The County Defendants seek summary judgment on these claims contending that Reavy did not initiate or continue any criminal proceeding against Patel who was arrested by and at all times in custody of the Village. County Defs.' Mem. at 4-6.

To successfully maintain a Section 1983 malicious prosecution claim, a plaintiff must be able to establish the elements of malicious prosecution under state law. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). In New York, a malicious prosecution plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citing *Manganiello*, 612 F.3d at 160-61). A police officer may be liable for malicious prosecution if he "'played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act' or if he 'fabricates evidence or withholds relevant and material information from the

prosecutor.'" *Gagliano v. County of Suffolk*, CV181895JMAARL, 2022 WL 4370194, at *7 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 18CV01895JMAARL, 2022 WL 4368329 (E.D.N.Y. Sep. 20, 2022) (quoting *Andrews v. Johnson*, No. 21-CV-8310, 2022 WL 158538, at *4 (S.D.N.Y. Jan. 18, 2022)).

The existence of probable cause is a complete defense to a claim of malicious prosecution. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted); *Gagliano*, 2022 WL 4370194, at *7. Probable cause "must be determined by reference to the totality of the circumstances," *Manganiello*, 612 F.3d at 161, and may be "based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted); *see Coyle v. Coyle*, 354 F. Supp. 2d 207, 212 (E.D.N.Y. 2005). The fact that a defendant is ultimately acquitted at trial, however, this has no bearing on probable cause to arrest. *James v. Alvarez*, Nos. 05-CV-6992, 06-CV-3007 (CBA)(LB), 2008 WL 11414567, at *7 (E.D.N.Y. Feb. 15, 2008), *report and recommendation adopted*, 05-CV-5992 (CBA)(LB), 2008 WL 11414568 (E.D.N.Y. Mar. 31, 2008). Rather, "[p]robable cause continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Walston v. City of New York*, 754 F. App'x 65, 66 (2d Cir. 2019) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)). A determination of "'a lack of probable cause generally creates an inference of malice.'" *Manganiello*, 612 F.3d at 163 (quoting *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003)) (alterations and citations omitted). Where there is some indication in the police records concerning a fact crucial to the

existence of probable cause that "the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome." *Manganiello*, 612 F.3d at 162 (quoting *Boyd*, 336 F.3d at 77). Probable cause "may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers." *Jackson v. City of New York*, 939 F. Supp. 2d 235, 249 (E.D.N.Y. 2013); *see Harrison v. Incorporated Village of Freeport*, 498 F. Supp. 3d 378, 391 (E.D.N.Y. 2020); *Virgil v. City of New York*, No. 17-CV-5100, 2019 WL 4736982, at *4 (E.D.N.Y. Sep. 27, 2019).

Applying these standards, an issue of material fact exists as to whether probable cause existed for Plaintiff's arrest and the continuation of the prosecution. It is undisputed that Patel was criminally charged and prosecuted and that those proceedings terminated in his favor when he was acquitted at trial. While Plaintiff's acquittal has no bearing on whether there was probable cause to arrest, *see* Village Defs.' Reply at 3-5, the Court cannot determine that probable cause for the arrest existed as a matter of law because factual disputes remain regarding the pertinent events and the knowledge of the officers. Specifically, the Village Defendants contend that Marino had probable cause to arrest and charge Plaintiff with an aggravated DWI, among the other related charges, because he was driving a vehicle that collided with another vehicle, Patel refused to complete a field sobriety test, and a breathalyzer test indicated that his BAC was .241%. Village Defs.' Mem. at 6. They

21

further argue that because Plaintiff's nine-year-old son was in the vehicle with him, there was probable cause to arrest and charge him with driving while intoxicated with a minor under fifteen and knowingly acting in a manner likely to endanger the welfare of a child under the age of seventeen.[5] *Id.* at 6-7. A determination of probable cause based on this evidence, however, requires the Court to credit only the Village Defendants' version of the events. Plaintiff contends that he had no alcohol that day, and could not complete the field sobriety test because, as Marino observed, he was focused on his unattended son and injured his leg during the car accident. Moreover, Marino knew Alvino amended the motor vehicle accident form MV-104 making Plaintiff appear at fault for the collision, and that Marino was impeached at trial on various issues, such as completing an arrest report to charge Patel with an aggravated DWI before the breathalyzer test was administered. *See* Second Pl. Counter 56.1 ¶¶ 4, 7, 11-14, 51-53; Pl. Opp. Exs. I, J. These material issues of fact are based on the credibility of the parties and witnesses. Accordingly, drawing all inferences in Plaintiff's favor, the Court cannot make a probable cause determination as a matter of law.

Moreover, while the evidence is sparce, an issue of material fact exists as to whether the Village Defendants acted with actual malice. Patel claims that Marino's field sobriety tests following the accident were unnecessary and retaliatory, and that

---

[5] The Village Defendants also argue that the malicious prosecution claim predicated on reckless assault pursuant to PL § 120.00 should be dismissed because this charge was not brought by Officer Marino and, in any event, was supported by probable cause. Village Defs.' Mem. at 6-7. Plaintiff does not specifically address this argument in his opposition. Because this claim was added by non-party Nassau County District Attorney, which is undisputed by Plaintiff, any malicious prosecution claim predicated on reckless assault pursuant to PL § 120.00 is dismissed. The claims based on the other charges remain, however, as explained above.

Marino bragged to Lamb about the arrest on the way to the OBPD station saying "look, we got one of these guys" referring to Plaintiff.  Second Pl. Counter 56.1 ¶¶ 13-14, 18.  He further contends that Marino attempted to drive closer to another car driven by Patel's neighbor so that Plaintiff would be visible to the driver and embarrass him, that Marino knew Alvino falsely amended motor vehicle accident form MV-104 to make Plaintiff appear at fault for the collision, and that Marino was impeached on issues related to the arrest at trial.  *See* Pl. Opp. to Village 56.1 ¶¶ 14, 18-19; Second Pl. Counter 56.1 ¶¶ 44, 51-53; Pl. Opp. Exs. I, J.  Should a jury credit Patel's version of the events and determine probable cause did not exist for the arrest and prosecution, an issue of fact exists as to whether the Marino acted with actual malice.  Accordingly, summary judgment is denied on the malicious prosecution claims against Marino.[6]

As for the state and federal law malicious prosecution claims against the County Defendants, an issue of material fact exists regarding whether probable cause existed for Reavy to continue the criminal proceedings.  While Plaintiff was arrested and charged by the Village Defendants, the prosecution was carried out by the County.  *See generally* County Defs.' Mem. Ex. D; Pl. Opp. Exs. H, L, DE [86].  Moreover, it is undisputed that the Nassau County District Attorney used Reavy's report and breathalyzer results from the test he administered as part of the prosecution against Patel, and Reavy was called as a witness at Plaintiff's criminal trial.  Pl. Opp. at 24-26; County Defs.' Mem. Ex. F.  While an acquitted defendant

---

[6] Summary judgment is granted as to all claims against the Village and Lamb in his official and individual capacities as explained below.

23

cannot always bring a malicious prosecution claim against a testifying witness, County Defs.' Reply at 5-7, here, a determination that Reavy had probable cause to continue the prosecution would, again, only credit the County Defendants' version of the events.  The parties dispute material facts as to how the breathalyzer test was performed and its results, as well as the information in Reavy's report as to whether Plaintiff smelled of alcohol, had bloodshot and/or glassy eyes, and other notes regarding his appearance and statements.  Pl. Opp. to County 56.1 ¶¶ 13-14, 19-20; County Reply 56.1 ¶¶ 30-36, 54-55; County Defs.' Mem. Ex. F.  While Plaintiff fails to put forth evidence as to how the breathalyzer results would be affected if the same mouthpiece from Reavy's pocket was used for his test, *see* County Defs.' Reply at 5-7, Plaintiff claims that he never saw the results, that he had no alcohol that day, and that Reavy's report is false.  Second Pl. Counter 56.1 ¶¶ 35-36, 54-55.  This constitutes a continuation of a criminal proceeding for a malicious prosecution claim because the report, breathalyzer results, and Reavy's testimony were used by the prosecution and, as the County Defendants agree, includes facts crucial to the existence of probable cause for the criminal charges against Patel.  *See* County Defs.' Reply at 5-7.  These disputed facts create a credibility determination for the factfinder.

Moreover, while the evidence is again sparce, an issue of material fact exists as to whether the County Defendants acted with actual malice.  Plaintiff claims that Reavy told him, "I got you," after the breathalyzer test and nodded to Marino and further said "I got him for you," and Patel disputes whether the Defendants knew each other prior to his arrest.  Pl. Opp. to County 56.1 ¶ 25; Second Pl. Counter 56.1

24

¶¶ 33, 37.  Under these circumstances, if Plaintiff's version of the events is credited by a jury, meaning the Reavy lacked probable cause to continue the prosecution, this creates an issue of material fact as to whether Reavy acted with malice.  Accordingly, drawing all inferences in Plaintiff's favor, summary judgment is denied as to Patel's malicious prosecution claims against Reavy.[7]

### B. Plaintiff's Abuse of Process Claims

Next, the Village Defendants argue that Plaintiff's state law abuse of process claim should be dismissed because, again, the prosecution was supported by probable cause, and Patel fails to identify a collateral objective in bringing his criminal prosecution.  Village Defs.' Mem. at 10-11.  The County Defendants argue that the abuse of process claim fails because no process was ever issued by the County Defendants against Plaintiff, and Patel has not presented any collateral objective by Reavy.  County Defs.' Mem. at 6-7.

"The elements of a § 1983 cause of action for malicious abuse of process are provided by state law." *Sorrell v. County of Nassau*, 162 F. Supp. 3d 156, 170 (E.D.N.Y. 2016) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).  In New York, an abuse of process claim requires a defendant who: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76 (citation and quotation omitted).  "The use of the instrument or process must have itself been

---

[7] Summary judgment is granted as to all claims against the County as explained below.

improper." *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 638 (S.D.N.Y. 2015) (citation omitted); *Mangino v. Village of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) ("the gist of the tort of abuse of process, [as] distinguished from malicious prosecution, is not commencing an action or causing process to issue without justification, but misusing or misapplying process *justified in itself* for an end other than that which it was designed to accomplish.") (emphasis in original) (internal quotation and citations omitted).

Moreover, the collateral objective element is "usually characterized by personal animus," *Jovanovic v. City of New York*, No. 04-CV-8437 (PAC), 2010 WL 8500283, at *9 (S.D.N.Y. Sep. 28, 2010) (quotation and citation omitted), *aff'd*, 486 F. App'x 149 (2d Cir. 2012), and may include "infliction of economic harm, extortion, blackmail and retribution." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y 2010) (citation omitted); *Dash v. Montas*, 17CV515PKCRER, 2020 WL 1550708, at *10 (E.D.N.Y. Mar. 31, 2020). Bare allegations of a malicious motive will not support an abuse of process claim, however. *Savino*, 331 F.3d at 77. Indeed, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.*

Here, Plaintiff's abuse of process claims against the Village Defendants and the County Defendants fail as a matter of law. Patel does not present evidence of a collateral objective for the arrest or prosecution. While he alleges that Marino's attempts to administer unnecessary sobriety tests were "retaliatory and in bad faith,"

Pl. Opp. to Village 56.1 ¶ 18; Second Pl. Counter 56.1 ¶ 13, no further explanation of motive or additional evidence is provided to demonstrate a collateral objective. Further, Patel fails to provide evidence that the Village Defendants knew Plaintiff before the arrest to demonstrate a personal animus. Similarly, Patel does not provide a collateral objective for Reavy's alleged misconduct. Plaintiff claims Reavy told him, "I got you," and said to Marino that "I got him for you," Second Pl. Counter 56.1 ¶¶ 33, 37, but he fails to provide an explanation or collateral objective pertaining to Reavy's motive other than to continue the arrest and prosecution. Moreover, he does not establish a motive for Reavy allegedly falsifying the report and breathalyzer test results, Second Pl. Counter 56.1 ¶¶ 54-55, and there is no evidence that the County Defendants and Patel knew each other before this incident so as to establish personal animus. Accordingly, summary judgment is granted as to Plaintiff's abuse of process claims against all Defendants.

### C. Plaintiff's Claims Against the OBPD and the NCPD

For Section 1983 claims, "departments that are merely administrative arms of a municipality do not have legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Morales v. Nassau Cnty. Corr.*, No. 21CV02554JMAAKT, 2021 WL 4776632, at *3 (E.D.N.Y. Oct. 13, 2021) (citing *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (other citations and quotations omitted)). As a result, district courts have repeatedly held that claims against administrative departments, such as police departments, should be dismissed. *See Henrius v. County. of Nassau*, No. 13CV1192SJFSIL, 2016 WL

27

1296215, at *12 (E.D.N.Y. Mar. 31, 2016) (dismissing claims against the Nassau County Police Department) (citing *Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 50 (E.D.N.Y. 2010) (dismissing claims against the Nassau County Sheriff's Department)); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claims against the Lynbrook Police Department).  Accordingly, the Court grants summary judgment and dismisses all causes of action against the OBPD and the NCPD because they are departments under the Village and the County and are, therefore, not suable entities.

### D. Plaintiff's *Monell* Claims

Next, all Defendants argue that Plaintiff's *Monell* claims against Old Brookville and the County cannot survive because Patel fails to demonstrate that his injuries were caused by any municipal policy that contributed to his prosecution. Village Defs.' Mem. at 11-12; County Defs.' Mem. at 3-4.  The Court agrees.

Under *Monell v. Dept. of Soc. Serv. of City of New York*, municipalities and local government entities may be held liable under Section 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 590, 98 S. Ct. 2018, 2019-20 (1978).  The "policy or custom" element may be established by demonstrating:  (1) "a formal policy officially endorsed by the municipality"; (2) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (3) "a practice so consistent and widespread that, although not expressly

28

authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 419 (S.D.N.Y. 2008).

Moreover, the "plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citation omitted); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Wiltshire v. Williams*, No. 10-cv-6947, 2012 WL 899383, at *10 (S.D.N.Y. Mar. 16, 2012) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights") (internal quotation omitted).  Nevertheless, "'allegations of a single, isolated, incident of [municipal] misconduct will not suffice' for purposes of demonstrating the existence of a municipal policy." *McCluskey v. Town of Southampton*, No. 12-CV-2394 SJF ETB, 2013 WL 4049525, at *9 (E.D.N.Y. Aug. 9, 2013) (quoting *Aguilera v. County of Nassau*, 425 F. Supp. 2d 320, 324 (E.D.N.Y.

2006) (alteration in original)); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."). Finally, a municipality cannot be held liable for an employee's actions under *respondeat superior*. *See, e.g.*, *Banner v. Nassau Cty. Corr. Facility*, No. 12-CV-5344 SJF GRB, 2012 WL 6050558, at *3 (E.D.N.Y. Dec. 3, 2012) (citing *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036) ("It is well-established that a municipality or municipal entity, such as Nassau County, cannot be held liable under section 1983 on a *respondeat superior* theory.").

Consistent with these standards, Plaintiff's *Monell* claims against the Village and the County fail.  Patel presents no evidence of a policy, practice or custom by the Village that contributed to his arrest and prosecution such that it was the moving force behind the alleged unconstitutional violation.  The same is true for the County in that Plaintiff fails to establish a policy, practice or custom which violated his constitutional rights.  Further, Patel does not sufficiently establish an alleged "culture which supports and encourages its officers to make more arrests and make them stick once instituted" or the police departments' failure to "train its officers in ethics, morals and repercussions of perjury."  Pl. Opp. at 20-24.  He presents no evidence in support of these assertions other than the facts of his own case.  Accordingly, summary judgment is granted as to Plaintiff's *Monell* claims against the Village and the County.

### E. Plaintiff's Claims Against Reavy, Lamb and Marino in Their Official Capacities

It is well settled that lawsuits brought against individuals in their official capacities are the equivalent of suits against the municipal entity, and official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, n.55; *McCluskey v. Imhof,* 17CV5873JFBARL, 2018 WL 5077169 (E.D.N.Y. Aug. 27, 2018), *report and recommendation adopted*, 17-CV-5873(JFB)(ARL), 2018 WL 4521207 (E.D.N.Y. Sep. 21, 2018) (citations omitted).  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 878 (1985).

Because this action is brought, in part, against both the Village and the County, the claims against Marino, Lamb and Reavy in their official capacities are redundant.  Accordingly, summary judgment on these claims is appropriate, and the causes of action against the individual defendants in their official capacities are dismissed.

### F.  Plaintiff's Remaining Claims Against Lamb

Next, the Village Defendants argue that any remaining claims against Lamb should be dismissed because he was not personally involved in an alleged deprivation of Plaintiff's constitutional rights such that any Section 1983 claim against him fails. Village Defs.' Mem. at 9-10.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir.

31

2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Crandall v. David*, 457 F. App'x 56, 58-59 (2d Cir. 2012) (summary order) (affirming summary judgment dismissal of plaintiff's claims against defendant who had no personal involvement in an unlawful seizure); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (requiring that a plaintiff demonstrate a defendant's "personal involvement" in an alleged Section 1983 violation, defined as "one who has knowledge of the facts that rendered the conduct illegal" or indirect participation such as "ordering or helping others to do the unlawful acts"). Because "'personal involvement is a question of fact, [this Circuit] is governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant[s] [are] entitled to judgment as a matter of law.'" *Dash*, 2020 WL 1550708, at *13 (quoting *Farrell*, 449 F.3d at 484) (brackets in original).

Here, Plaintiff fails to sufficiently establish a Section 1983 claim against Lamb. Even if the parties dispute whether Lamb was in Marino's car after Plaintiff's arrest, *see* Pl. Opp. to Village 56.1 ¶ 22; Second Pl. Counter 56.1 ¶ 18, Patel does not demonstrate that Lamb contributed to the alleged malicious prosecution, which created a deprivation of his constitutional rights. Lamb, albeit a witness, was involved in the transport of Plaintiff from the OBPD to the NCPD, but he was not the arresting officer, nor did he initiate the charges against Plaintiff. Moreover, Patel does not claim that Lamb fabricated evidence, that he had knowledge of the amended MV-104 report or falsely testified at the criminal trial, or produce other evidence of Lamb's personal involvement in the deprivation of Plaintiff's constitutional rights.

32

Accordingly, summary judgment is granted as to the remaining claims against Lamb in his individual capacity.

### G. Qualified Immunity

Finally, the Village Defendants and the County Defendants argue that Marino and Reavy are entitled to qualified immunity. Village Defs.' Mem. at 8-9; County Defs.' Mem. at 8-9. Qualified immunity protects municipal officials from both civil damages and "'unnecessary and burdensome discovery or trial proceedings.'" *Spavone v. New York State Dep't of Corr. Services*, 719 F.3d 127, 134 (2d Cir. 2013) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 1596 (1998)), and applies to "circumstances where an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' and applies 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Spavone*, 719 F.3d at 135 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)). "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone*, 719 F.3d at 135 (internal quotations and citation omitted). "In assessing objective reasonableness, [courts] look to whether officers of reasonable competence could disagree on the legality of the defendant's actions[,]" *McGarry v. Pallito*, 687 F.3d 505, 512 (2d Cir. 2012) (internal quotations and citation omitted); *see Manganiello*, 612 F.3d at 165, in light of the "particular factual context" he confronted. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). "In short, if at least some

reasonable officers in the defendant's position could have believed that [the challenged conduct] was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." *Id.* (brackets in original) (quotations marks and citations omitted). The right must be "'clearly established' at the time of the challenged conduct." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

While qualified immunity is ordinarily decided by the court, "'that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required' to resolve the factual disputes before the court makes its legal determinations." *Moroughan v. County of Suffolk*, 514 F. Supp. 3d 479, 539-40 (E.D.N.Y. 2021) (quoting *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994)); *see, e.g., Gagliano*, 2022 WL 4370194, at *9 (because factual issues remained as to probable cause for the initial traffic stop and the arrest, a determination of qualified immunity was premature at summary judgment); *Kayo v. Mertz*, 531 F. Supp. 3d 774, 795 (S.D.N.Y. 2021) (factual disputes regarding existence of probable cause make it "premature to resolve defendants' motion for summary judgment on the false arrest claim on the basis of qualified immunity") (internal quotation omitted); *Vitalone v. City of New York*, No. 15-CV-8525 (JGK), 2018 WL 1587591, at *6 (S.D.N.Y. Mar. 27, 2018) ("Because there are issues of fact relating to the actions of the plaintiff and the officers at the time of the arrest, and these issues relate to the reasonableness of the officers' belief that there was probable

cause to arrest, the motion for summary judgment on the basis of qualified immunity is also denied.").

Here, because questions of fact remain regarding whether probable cause existed for Plaintiff's arrest, such as the results of his field sobriety test, whether Patel smelled of alcohol, slurred his words and had glassy and bloodshot eyes, and whether Marino prematurely completed an arrest form to criminally charge Plaintiff and knew Alvino amended the MV-104 form, the Court cannot conclude as a matter of law that Marino is entitled to qualified immunity. Such a determination is premature at this juncture because, construing the evidence most favorably to Patel, no reasonable officer would believe that these alleged actions were lawful. *Moroughan*, 514 F. Supp. 3d at 540 ("if the facts are construed most favorably to plaintiff, no reasonable officer would believe there was probable cause, or that his conduct did not violate plaintiff's clearly established rights."). Accordingly, the Village Defendants' Motion is denied as to this issue.

The Court similarly concludes that it cannot determine, as a matter of law, that Reavy is entitled to qualified immunity. As explained above, factual disputes regarding whether probable cause existed for Reavy to continue the prosecution remain, including the alleged fabrication of his report, Plaintiff's breathalyzer test results, and Reavy's trial testimony. Second Pl. Counter 56.1 ¶¶ 33-37, 54-55. Drawing all inferences in Plaintiff's favor, it is again premature to determine whether Reavy is entitled to qualified immunity prior to trial. Accordingly, the County Defendants' Motion for summary judgment is likewise denied as to this issue.

## IV. CONCLUSION

For the reasons set forth above, as to the Village Defendants' Motion, the Court: (i) grants summary judgment as to Plaintiff's abuse of process claim, all claims against the OBPD, all claims against Lamb in his official and individual capacities, all claims against Marino in his official capacity, and the *Monell* claim against the Village; but (ii) denies summary judgment as to Plaintiff's federal and state malicious prosecution claims against Marino in his individual capacity and on the issue of qualified immunity.  As to the County Defendants' Motion, the Court:  (i) grants summary judgment as to Plaintiff's abuse of process claim, all claims against the NCPD, all claims against Reavy in his official capacity, and the *Monell* claim against the County; but (ii) denies summary judgment as to the federal and state malicious prosecution claims against Reavy in his individual capacity and on the issue of qualified immunity.

Dated: Central Islip, New York
March 22, 2023

**SO ORDERED**

 /s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge